IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CHARLES KIGER,**

    **Plaintiff,**

**v.**                                                      **CIVIL ACTION NO. 2:11-cv-70**

**TIMOTHY STEWART, Warden,**
**DR. MICHAEL WATERS,**
**JAWAD AHMED, M.L.P.,**
**LEWIS BRESCOACH, HSA,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER DISMISSING PLAINTIFF'S COMPLAINT

### I.    Procedural History

The plaintiff initiated this action on September 7, 2011, by filing a complaint pursuant to Bivens v. Six Unknown Named Agents of the Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. § 1983 and authorized suits against federal employees in their individual capacities. (Doc. 1). On December 28, 2011, Plaintiff filed a motion to amend his complaint. (Doc. 23). The motion was granted on January 23, 2012. (Doc. 35). Plaintiff filed his amended complaint on January 27, 2012. (Doc. 36).

On May 24, 2012, Defendants filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. 75). Plaintiff filed a response to Defendants' motion on June 6, 2012. (Doc. 89).

Thereafter, both Plaintiff and Defendants consented to exercise of jurisdiction by a United States Magistrate Judge. (Doc. 91). Therefore, on July 9, 2012, this case was referred to the undersigned for all further proceedings. (Doc. 93).

## II. Contentions of the Parties

A. Complaint

In his complaint, Plaintiff claims that Defendants have violated the Eight Amendment to the United States Constitution by being deliberately indifferent to his serious medical needs. More specifically, Plaintiff alleges that he has a twenty-seven year history of chronic pancreatitis. He alleges that, as treatment for his chronic pancreatitis, doctors at WVU Healthcare and UPMC Hospital prescribed him various pain medications. He further alleges that during his time of incarceration at FCI Morgantown, Defendants have refused to provide him with these prescribed medications.

Plaintiff goes on to argue that Defendants' actions have caused him irreversible pancreatic damage. As a result, Plaintiff seeks injunctive relief and monetary damages in excess of $50,000.

B. Motion to Dismiss or, in the Alternative, for Summary Judgment

In their motion to dismiss or, in the alternative for summary judgment, Defendants allege that the complaint is procedurally barred because Plaintiff has failed to exhaust all available administrative remedies. In the alternative, Defendants allege the complaint is without merit because Plaintiff has failed to show that Defendants have violated the Eighth Amendment to the United States Constitution. Also in the alternative, Defendants allege that the complaint is without merit because prison officials are entitled to qualified immunity when making discretionary healthcare decisions.

C. Plaintiff's Response to the Motion

In his response to Defendants' motion, Plaintiff contends that his complaint constitutes a plausible claim for relief, such that it should survive a motion to dismiss. He also clarifies that his complaint does not rely on the doctrine of *respondeat superior*.

### III.    Standard of Review

A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly at 554-55. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v.

E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. Motion for Summary Judgment

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial.

Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587.

## IV. Analysis

A. Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997 (e) (a). Exhaustion as provided in 1997 (e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v.Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to filing a complaint in federal court. See Porter , 534 US at 524 (citing Booth, 532 US at 741) (emphasis added). Moreover an inmate may procedurally default his claims by failing to follow the proper

5

procedures. See Woodford v.Ngo, 548 U.S. 81 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Federal Bureau of Prisons ("BOP") has established an administrative remedy procedure through which an inmate may seek a formal review of an issue for complaint relating to his confinement. Within twenty calendar days of the date of the occurrence on which the complaint is based, an inmate may file a written complaint with the institution on the proper form. See 28 C.F.R. § 542.14. If the inmate is not satisfied with the institutional Warden's response, he may appeal to the Regional Director within 20 calendar days of the Warden's response. See 28 C.F.R. § 542.15(a). If the inmate is still not satisfied, he may appeal the Regional Director's response to the office of General Counsel via a central office administrative remedy appeal. The final appeal must be filed within 30 calendar days of the date the Regional Director signed the response. Id. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In this case, Plaintiff used the BOP Administrative Remedy Program to address his medical treatment three separate times. (Doc. No. 77-2). Plaintiff filed Administrative Remedy Number 617416-F1 on December 3, 2010. The institutional remedy was denied on December 14, 2010, and Plaintiff filed a BP-10 regional appeal on April 5, 2011. (Id). On April 14, 2011, the BP-10 appeal was voided because plaintiff had previously filed a new remedy (628915-F1) on March 3, 2011, for the same complaint and had received an institutional response. (Id).

Plaintiff filed said second remedy on March 3, 2011, again alleging that his chronic pancreatitis was not being appropriately treated. (Doc. No. 77-5). On March 21, 2011, the remedy was denied. (Id). On May 12, 2011, Plaintiff filed a BP-10 regional appeal. (Id). The BP-10 appeal was denied on June 24, 2011. (Id). The remarks that accompanied the BP-10 denial

notified Plaintiff that he had the option of filing a BP-11 appeal. (Id). Plaintiff, however, did not choose to do so. (Doc. No. 77-2).

Finally, Plaintiff filed Administrative Remedy No 680271-R1 on February 24, 2012, requesting that he be properly medicated and accepted into the "Bates Program". (Doc. No. 77-6). On February 29, 2012, the remedy was denied because it concerned more than one issue and was submitted at the wrong level. (Id). The denial remarks advised Plaintiff that he could correct any procedural errors and resubmit his grievance within five days. (Id). Plaintiff, however, did not choose to do so. (Doc. No. 77-2).

This history clearly establishes that in all three remedy attempts, Plaintiff defaulted in fully exhausting his available administrative remedies as mandated by 28 C.F.R. § 542.15(a). The undersigned recognizes that Plaintiff avers that he filed a BP-11 that was denied. However, none of his exhibits support this claim, and the records of the BOP clearly dispute it. Therefore, Plaintiff's complaint is subject to dismissal for failure to exhaust his administrative remedies. However, even if he had exhausted his administrative remedies, it is still due to be dismissed for the following reasons.

B. Deliberate Indifference

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981). These principles apply to the conditions of confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that

both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment).

To establish a violation of the Eighth Amendment with respect to medical care, an inmate must prove two elements. See Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). First, the inmate must objectively prove that the deprivation of medical care was "sufficiently serious." Id. Second, the inmate must subjectively prove that prison staff acted with a "sufficiently culpable state of mind." Id.

The objective element is satisfied by proof of the inmate having a serious medical need. Id. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). A serious medical need can also exist if a delay in treatment would cause a life-long handicap or permanent loss. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

The subjective element is satisfied by showing deliberate indifference by prison staff. Johnson, 145 F.3d at 167. The Fourth Circuit has summarized what constitutes deliberate indifference:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. Nevertheless, mere negligence or malpractice does not violate the eighth amendment.

Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990) (citations omitted). Furthermore, so long as the medical treatment given is adequate, the fact that an inmate would have preferred a

different type of care does not constitute deliberate indifference. Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Similarly, the fact that other medical professionals would have pursued a different type of treatment does not, by itself, establish deliberate indifference. Hanson v. Smith, 9 F.3d 1557 (10th Cir. 1993). Accordingly, deliberate indifference is "generally not found when some significant level of medical care has been offered to the inmate." Atwater v. Gabriel, 2012 WL 750754 (M.D. Pa. 2012).

In the instant case, looking first at the objective element, there is little evidence that Plaintiff actually suffers from a serious medical problem. Although he has been and is currently receiving treatment for chronic pancreatitis, advanced medical tests have repeatedly failed to show any problem with his pancreas. For example, a September 2007 MRI and an April 2008 CT Scan both found his pancreas to be normal. (Doc. 77-8). Similarly, a January 2009 CT Scan found that his "pancreas is normal in size[.]" (Id).

These test results continued during his time of incarceration at FCI Morgantown. For example, in March 2011, a CT scan performed at the West Virginia University Hospital revealed "no evidence to suggest pancreatitis." (Doc. No. 77-11). This result was confirmed in August 2011, when another CT Scan at the West Virginia University Hospital found that his "pancreas appeared unremarkable." (Doc. No. 77-12). A November 2011 evaluation by a gastroenterologist similarly found no evidence to support Plaintiff's belief that he suffers from chronic pancreatitis. (Id).

From this medical history, it is doubtful that Plaintiff actually suffers from chronic pancreatitis or any other serious medical condition. The only contradictory evidence presented by Plaintiff is his own statements, and these statements are not entirely credible considering his

history of opiate abuse. (Doc. No. 77-7). However, even accepting that Plaintiff has a serious medical condition, the record establishes that he has received substantial and adequate care.

In particular, there is no evidence that Defendants have acted with deliberate indifference to Plaintiff's medical needs. Plaintiff contends that Defendants have acted with deliberate indifference by denying him access to medications that were previously prescribed to him. In point of fact, that appears to be Plaintiff's primary complaint. However, treatment of potential pancreatitis focuses on relieving pain and preventing further aggravation of the pancreas. In the professional opinion of FCI Morgantown staff and Defendant Dr. Waters, Plaintiff's abdominal pain does not require the use of opiates (Oxycontin, fentanyl suckers, and Percocet), because it can be equally and effectively managed with his treatment regimen of Aspirin, Omeprazole, Pancrelipase, and dietary restrictions. Moreover, Plaintiff's well-documented history of opiate dependence makes treating his abdominal pain with opiates a less desirable medical alternative. (Doc. 77-7, p. 2). As articulated above, ignoring the treatment preferences of an inmate does not constitute deliberate indifference, so long as the given treatment is adequate.

Here, the record shows that the treatment given to Plaintiff has been more than adequate. As of April 17, 2012, Plaintiff has been evaluated and treated by FCI Morgantown Medical Staff on forty-four separate occasions, with thirty-five of such encounters relating specifically to his alleged pancreatitis. (Doc. No. 77-7). As a result of these forty-four meetings, the FCI Morgantown Medical Staff has evaluated Plaintiff's blood eleven times and has sent two abdomen exam referrals to the University of Maryland's Department of Diagnostic Radiology for analysis. (Doc. No. 77-16; Doc. No. 77-17). In addition to the care being provided to him at FCI Morgantown, Plaintiff has also been given off-site medical care during his time of

incarceration, having been medically furloughed to local hospitals four different times. (Doc. No. 77-7).

Clearly, there is no evidence that Defendants have acted with deliberate indifference to Plaintiff's medical needs. They have consistently provided him with timely and adequate medical care, and the fact that he may have preferred a different course of treatment is simply irrelevant. Accordingly, Plaintiff has failed to prove the subjective element of his Eighth Amendment claim, and his complaint is without merit.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. No. 75) is hereby **GRANTED**, and the plaintiff's Amended Complaint (Doc. No. 36) is hereby **DISMISSED WITH PREJUDICE**. In addition, in light of the ruling on Plaintiff's Amended Complaint, it is further **ORDERED** that his Amended Motion for Injunctive Relief (Doc. 55) and Second Amended Motion for Injunctive Relief (Doc. 55) be **DENIED** because he cannot succeed on the merits.[1] Finally, Plaintiff's Motion for Medical Release (Doc. No. 94) is **DENIED**. The Clerk is directed to enter a separate judgment in favor of Defendants and strike this case from the active docket of this Court

It is so ORDERED.

---

[1] On December 14, 2011, Plaintiff filed a motion for temporary restraining order/preliminary injunction (Doc. No. 22), and on February 10, 2012, he filed a motion to amend his motion for temporary restraining order/motion for preliminary injunction. (Doc. No. 39). On March 5, 2012, the undersigned granted the motion to amend and entered a Report and Recommendation which recommended that Plaintiff's Motions for Temporary Restraining Order/Preliminary Injunction be denied. (Doc. No. 47). In so doing, the undersigned applied the standard for granting injunctive relief in this circuit as set forth in Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342 (4th Cir. 2009). Plaintiff failed to file objections, and the Report and Recommendation was adopted by the Honorable John Preston Bailey on April 2, 2012. (Doc. 61).

The Clerk of the Court is directed to mail a copy of this Memorandum Opinion and Order to the *pro se* Plaintiff by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide a copy of this Memorandum Opinion and Order to any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: July 12, 2012

DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE